This case this morning is Jordan v. Maxim Healthcare. Good morning, Your Honors, and may it please the Court. I am David Salmons on behalf of Appellant Maxim Healthcare Services. This case concerns regulations issued each year by the Colorado Division of Labor known as Minimum Wage Orders. These orders define the categories of employees and industry that are exempt from Colorado's overtime pay requirement. One of those exceptions is for companions, which are home health workers that assist physically impaired clients with everyday tasks such as bathing and getting dressed. For decades, the Division of Labor has consistently and authoritatively construed the wage orders to exempt all employees that perform companion work. Whether employed directly by the households or by third parties. It has announced its interpretation through final agency proceedings and through opinion letters, including to Maxim, which specifically sought, obtained, and relied upon the Division's guidance in this case. And it has reissued wage orders every year with the same language and with the intent that all companions be exempt from overtime regardless of the identity of their employer. Now, the District Court below committed several legal errors in rejecting the Division's longstanding interpretation of its own regulation, and its decision should be reversed. The first error I'd like to focus on is sort of a threshold issue. And it has to do with this Court's decision in U.S. v. Richter, which we submit provides the rule of construction for this case. In Richter, Judge McHugh's decision for the Court makes clear that when courts applying Colorado's wage orders, and Colorado law, construe a state regulation such as the wage orders, they must apply the same basic principles that govern statutory construction. That means, quote, the primary goal of interpretation is to give effect to the intent of the enacting body. And here that body is the Division of Labor. But rather than ask the straightforward question of whether the Division intended the companion exception to apply to all companions, the District Court imposed a heightened burden limiting the exception only to those employees that it concludes plainly and unmistakably qualify for it. But no heightened burden is appropriate, the Supreme Court made that clear recently in Encino Motorcars, and in any event it would be clearly satisfied where it's here the Division has authoritatively construed its own regulation to apply. Any other conclusion is inconsistent with Richter's requirement that we focus on how the Division intended the companion exception to apply, since there's really no meaningful doubt about the Division's intent here. Well, to determine what the Division's intent is, we start with the plain language of the wage order, don't we? Absolutely, Your Honor. Okay, so that takes us right into the question of whether the modifying clause, employed by households or family members to perform duties in private residences, applies just to domestic employees or also applies to companions and casual babysitters, right? I mean, that's where we start. That's absolutely correct, Your Honor, and what the Court below said is that construing that language, the phrase again applies here for companions, which doesn't have any qualification, it just says companions, casual babysitters, so babysitters has a qualifier, which is casual, and domestic employees, and then it says employed by households or family members that perform duties in private residences, so the question is, do you carry the household qualifier to all three of those items in the series? And we have competing canons of construction, right? Well, sure, Your Honor, there's the Court below relied on what's referred to as the series qualifier canon. The other obvious canon is the rule of last antecedent, which the Supreme Court recently in the Lockhart case sort of gave it to the Supreme Court, gave preeminence over the series qualifier question as a general matter, but... But what do we do about the fact that the Colorado Assembly has said that they don't recognize that canon? Well, I think that's actually not what the Colorado Assembly has said, Your Honor. What the statute you're referring to, and this is Colorado Revised Statute 2-4-214, does is it makes reference to a specific Colorado canon, Supreme Court decision that, in a criminal case, essentially adopted a rule that you always had to apply, the rule of the last antecedent. And what the legislature said is that the General Assembly hereby finds and declares that the rule of statutory construction expressed in that case, People v. McPherson... I'm sorry, I lost my spot here. Has not been adopted by the General Assembly and does not create any presumption of statutory intent. So it's not saying you can't apply it, and we, on pages 36 and 37 of our opening brief cite to several Colorado appellate cases that continue to apply the rule of last antecedent. It hasn't ceased to be a textual canon, even in Colorado. It just says you can't just automatically assume that that's what's intended. It requires courts to do what they should always do, which is look at the context and decide which canon is the best to apply, and that's the way Colorado courts have interpreted that provision. And when you do that here, we think the answer is actually clear, that the division's interpretation is the best interpretation. But I would just note, before I start walking through the reasons why, that we only have to show it's a plausible one to win this case and require reversal because of the requirement for deference to an agency's interpretation of its own regulation under Colorado law. Here, would that deference apply? We have some guidance here, but we don't have a promulgated rule or formal action, do we? We do, Your Honor, in fact, we have, and we cite to these, we have at least two formal adjudications or enforcement proceedings where, in fact, it was MACSUB's employees that initiated those with the division, and they were rejected. And these, you know, you can see these in the appendix starting around AA 538, and all of the letters and the enforcement proceedings are separate. So we have the enforcement proceedings, we have the letters in response to your client's request for interpretation, but it's not the sort of the garden variety situation where we have a regulation or some type of formal policy. Well, I think it's important here to keep in mind, Your Honor, that the governing statute, the Colorado statute that sets all of this up, is for, as we're using it, it's not the same thing. We're used to seeing statutes in federal law that provide discretion to an agency. It's a bit unusual. What it says is that overtime at a rate of one and one-half times the regular rate of pay may be permitted by the director of the Division of Labor under conditions and rules and for increased minimum wages, which the director after an investigation determines and prescribes by order. So there's really very little content to that. It's a statute that provides discretion to promulgate wage orders. Correct. And then it has this directive, which is, which shall apply equally to all employers in such industry or occupation. So the only real limitation is they are directing the Division of Labor that within a single category of employee or occupation, that you not discriminate among employers with regard to the overtime or minimum wage requirement. And is there any way to interpret the language that we are focused on, this exception, so that it doesn't conflict with the enabling statute? Yes. Yes, Your Honor. The way is to follow the Division's own interpretation, which is consistent with the enabling statute. But that still wouldn't treat differently people that the qualifier does apply to, which would be domestic employers. Oh, with regard to domestic, so again, let me try to parse this out. So my point is normally when we have some confusion and you have two possible interpretations of a regulation, and one of them conflicts with the language of the statute and the other is consistent with the language of the statute, it's pretty easy, because we're going to go with the one that doesn't conflict. Here, either interpretation violates the clause you just read about not treating people differently, that they all have to be treated the same in the same classification. So I think that's incorrect, Your Honor, and I'd make two points about it. The first is that that category of domestic employees is not a single category of employee or occupation. It is an amalgam, it is a catch-all. It includes cooks and gardeners and governesses and all others, and we see this both in the federal scheme and in the state one through its guidance and other interpretations that the AGS provided. And so it doesn't violate the rule of the statute, which is among a single category of industry or occupation, you have to treat employers the same. Well, what if I have a cook who cooks outside the home and delivers my food, and I have a cook who lives with me, I wish, and cooks every meal every day. They're both cooks, but one is in the household and one isn't. So in that instance, you'd have a category of employment that would be treated differently under this wage order. The way I would put it, Your Honor, is that what you have is a sort of catch-all of a variety of types of employees or industries where because of their connection to the household, they are provided a different rule with regard to overtime than others in those various categories. But you don't have a single set of employment occupation defined that then you treat employers differently based on that. But I would just add as a second point, Your Honor, that even if you think you can't perfectly interpret this regulation to fully comply with that mandate, I would think that you would still, especially if there's any ambiguity in the wage order here, you would construe it so as to the maximum extent possible to be consistent with the governing statute as opposed to just throw it out the window if you find that for a category that's not at issue in this case, that the agency may not be able to comply. That the agency may not have fully implemented that well. The third point I think is really important to keep in mind here is that the agency did not create these categories out of whole cloth. And this Court has recognized this, several other courts have recognized this. What the state agency did here was it went and looked at the categories of exemptions provided in Section 213 of the FLSA. And among those, and that section by the way is enumerated, lots of subparts and it breaks down a whole host of exceptions. And in 213A15 there's a category for employee, any employee employed on a casual basis in domestic service employment to provide babysitting services. And any employee employed in domestic service employment to provide companionship services. And then there's an entirely separate section, 213B21, which refers to any employee who is employed in domestic service in a household and who resides in such household. So under the federal scheme there is a category for companions that has no qualifier. There's a category for babysitters which has a casual basis qualifier. And there's a category for domestic employees which has a household qualifier. Although a slightly different one than the division adopted here which was reside in the household as opposed to being employed directly by the household. But that's the structure. And when an agency, when a state adopts that from federal law, the general presumption is they're carrying those meanings over and that's exactly what the division's interpretation has required. I'd like to... Are we talking about treating persons or entities within a category, are we talking about treating employers the same or treating employees... Employers is what the statute says, Your Honor. Employers the same? Okay, thank you. Yes, that's what the statute says. I'd like to reserve the remainder of my time. Good morning. Good morning, Your Honors. My name is Bob DeRose and I represent the appellees in this case, Ms. Jordan and over 1,000 Coloradans who are employed as companions with the appellant who's a third-party provider of home health care services. It's important to note that this case began in the State District Court of El Paso County in Colorado Springs, alleging class violations of the Colorado Wage Act. More specifically, violations of the Colorado Minimum Wage Orders. It's also very important to note that the appellant moved this case to the Federal District Court under CAFA because a Maryland corporation employed Coloradans in the state of Colorado, worked them more than 40 hours a week, in some instances more than 12 hours a day, and did not pay overtime as prescribed by the Colorado Minimum Wage Act. It is important to know why the employer has bent over backwards to remove itself to the federal jurisdiction. It is because their arguments from the inception, from the motion to dismiss that was denied, to the cross motions for summary judgment, which was denied on their behalf, to the briefs that were before this court here today, they insist on applying federal law. As this court has said in Salazar v. Butterball, in dealing with state statutes, you apply the state law. Is there any question that the department here looked to the FLSA regime in deciding how to do these wage order statutes, I mean regulations? Are you talking about when they crafted the minimum wage order or when they did their opinions? When they did both. I mean they looked to, I mean based upon what I've read in preparing for this case, that they used that as their touchstone in deciding their own regulatory regime. Am I wrong on that? I would not call it a touchstone as I would call the Fair Labor Standards Act the floor. What Colorado did is what states are free to do, they look at the Fair Labor Standards Act and say this is what the minimum requirement the federal government gives us. But the Colorado legislature said for Coloradoans, we're going to do more. Well the bottom line is it's always going to be relevant. So I mean this whole notion that somehow or other there's some big change that takes place by bringing it to federal court. If they were in state court, unless the state court wasn't trying to reach the right result, they would be looking at the federal guidance as well to try to make sense out of this, right? Except that if you take a look at the appellant's argument, one, they cite Encino Motor Cars for the burden that they have to bear. And two, they cite the burden that the employer has to meet. And not Chase v. Farmers Insurance Exchange which says the burden relies on the defendant, which is a higher burden at the state level than the federal. What is that burden? The Chase v. Farmers Insurance Exchange appellant bears the burden to demonstrate that the employee is plainly and unmistakably entitled to the, fits within the exemption. And did you ever press in your brief anywhere that they needed to apply that standard? We do in our brief indicate that the court followed, correctly followed the state law. I don't think you answered my question. I don't think anywhere in your brief did you say that, call them on their attempt to apply not the plainly unmistakable standard. Am I wrong? I don't think there's anywhere where you said, no, no, no, you can't apply this, you've got to apply this higher standard from Colorado. You didn't do that, did you? Specifically as you're saying, Your Honor, no we didn't because we don't have to get... All right, then what are we talking about that for now? Well, then I'll get right to the point. What we're talking about is that the state statutory interpretation of the Section 5 of the minimum wage order. And in that section, you have three occupations that fit within the group of coverage known as the health and medical industry. The Colorado state law requires that regulations and statutes be given their plain meaning and only when the plain meaning is met, the plain meaning is ambiguous that you go to legislative history or you go to any of the canons of construction. What we have here is three groups of occupations that could either be employed by households or family members or by third parties. So you're saying the regulation here is plain on its face, in other words, it's unambiguous? It is unambiguous. I mean if the regulation was unambiguous? It was applied because the appellant was arguing the last antecedent rule and the judge was countering the fact that even if you could look at the last antecedent rule, that you still look at the contextual parameters and not only that, the... If the regulation is unambiguous? No, it don't. And we argue that you take a look at this, you're reading a... But you're arguing in your brief the series qualifier canon, aren't you? As one of the... If the court reaches that it's unambiguous, that you would do the series qualifier canon and not the last antecedent rule. If it's ambiguous? Yes, because much of the thrust of the appellant's brief was to use the last antecedent rule because it suits their purpose. Well, which is the same reason you want the series qualifier. You all use what you have when you come to see us. Exactly. I meant that as no aspersion but as being the appellee. But really, when you take a look at it, Your Honor, the Colorado minimum wage order, even when you look to the federal, if you take a look at the Department of Labor's own website, indicates that the Colorado exception for companions is narrower than the federal. One, because it doesn't have the general household provision and the 80-20 rule. And the federal rule also has a specific exclusion up until October of 2015 for third-party providers. The appellant wants to juxtapose the federal requirement onto the state statute that doesn't exist. And if you just look at the plain language of Section 5, it tells you the three occupations within the health industry. Is domestic employees a discrete occupation? It is. How so? I mean, a lot of people can be domestic employees across a whole range of occupations. Well, it can be a catch-all, but it still fits within the grouping. Well, if it's a catch-all, it would support the argument that that catch-all needs to be qualified. It also takes a look at, just because you have the catch-all, the babysitters are work inside the home. Domestic employees work inside the home, and companions work inside the home. But they're discrete occupations. Domestic employees is not a discrete occupation. It's not a discrete occupation, but what we're saying is that Colorado, in enacting its wage order, took a look at three groups of occupations that work inside the home. That fit within the health and medical industry, which is one of the coverage groups. And said, we are going to extend an exemption only to household or family member employers, but not to third-party providers. Now, the appellant argues that that is not equal treatment under the other groups. Under the other section of the minimum wage order. We argue that they're reading too narrow an idea of the equal application. The equal application is that all third-party providers of employees for these occupations are treated the same and are not entitled to the exemption. Because you also have to read it. Wait, wait, I'm not following you. So, for a companion, the way the statute is written, that is that employers of companions have to be treated the same in terms of what they have to pay. So, if I hire a companion to take care of my father-in-law in my home, I should get the same rule that applies to all three occupations. So, if I hire a companion to take care of my father-in-law in my home, I should get the same rule that applies to me than if that companion is provided through someone like Maxim here. Not under the Colorado Minimum Wage Act. You, in the personal one you described, you get the exemption because you're a household or family. A third-party would not. Okay, how does that not violate the requirement in the enabling statute that the employers of the single profession, the single job companions, be treated the same? Well, the statute says that employers have to be treated the same. It doesn't say that the statute couldn't make categories of employers. Meaning that because Maxim was a Maryland corporation that came into Colorado to provide the services, they have to be treated the same as a Colorado corporation that hired and employed third-party employees. That's where the equal nature of it, because you have to read this in connection with the idea that the Colorado statute is trying to expand coverage for individuals, and that is the purpose and effect of the minimum wage order. To read it the way Maxim wants to read it, it is trying to find a solution that narrows the coverage. Colorado could very well have just said, we incorporate the federal statute in total, but they didn't. Many states do. I am from Ohio, that's exactly how it's written in Ohio, they just incorporate the federal statute. In Colorado, the Colorado legislature, adhering to the first section of the minimum wage order, said that we are going to give more protection, i.e., we are going to only provide the exemption for household or familial employers, but not the employers for third-party providers. And that is more not even in its assignment. Where does it say that? You are looking at the wage order? It's section 1, not section 5. It says, if an employee is covered by both the state and federal minimum wage laws, the law which provides a higher minimum wage or a set of higher standards applies. And then you look to the bulletin, 29I, that interprets that section. It says, employees can be covered by the Colorado and federal wage law, the federal or Colorado wage law, or neither. And Colorado or could be subject to both. And it says, when, in instances, it could be covered by both, you have to pick the law that gives the greater coverage or protection. That's to be implied. Okay. And I agree with that. I understand that. Now show me the language you rely on to tell me that Colorado insists that companions do not fall within the exception if they are employed by a third-party company like Maxim. Because, as I heard earlier today, sometimes silence can speak volumes. And in this case, when Colorado was setting out what its parameters were going to be, it did not list third-party providers like the federal statute did. There is a federal reg that actually identifies third-party providers as part of an exemption. Colorado chose not to do that. What do we do with the ongoing interpretation that's been given to the wage order by the Department of Labor in Colorado? Does that matter at all? We give it no deference? Well, you give the minimum wage order deference, not the agency interpretation that got it wrong. And why not? I mean, you certainly do that in the federal system. Our deference, I think, is what they call it. Why wouldn't you? The agency that's responsible for administering this regulation, that wrote the regulation, doesn't know what it means? It's not this positive, but that doesn't mean that it is not something that we would look at and give deference to. Well, even under the Colorado Administrative Procedures Act at 24-4-1067, I'm running out of time, I should get this out here, that says that courts shall hold unlawful and set aside any agency action that is contrary to law, arbitrary, or capricious. And what the lower court found correctly was is that the direct, may I finish? The director, in the letters that it provided, did not interpret, didn't go through any analysis, didn't do any investigation, as is its charge, and basically rendered a belief, and that's an actual quote, I think, it's belief, that it was identical to the federal statute. And we showed instances in our briefing where they are not the same, that the Colorado statute is more constrictive and more narrow, narrowly constrict against the employer, and then the district court basically said they reject and give no deference, and only have it best persuasive, and it was unpersuaded that the Colorado minimum wage order applied to, the exemption applied to third party providers. Thank you. Thank you, Your Honor. Just a few points in rebuttal. First, as we point out in the briefs, the district court's construction of the wage order creates significantly more superfluity problems than the divisions, because instead of just having a superfluous and, in a wage order that has lots of already superfluous conjunctive phrases, you would render the nouns of babysitter and companion essentially superfluous, because it's not disputed that those generally fit within that amalgam catchall of domestic employees. At the very minimum, the division's interpretation is not plainly erroneous or inconsistent with the regulation. And I would note that the very cases that the district court relied on for application of the series qualifier canon, the estate of people of interest of M.W., each of those cases, even though they apply the series qualifier, notes that context is very important, and that the language they were interpreting in each of those cases was subject to more than one interpretation. And that's all you need to conclude to decide this case in reverse. The last point I would make is that this notion of a heightened burden in order to apply the exception, if you look at the case that is, you know, the Colorado case that adopted that chase, they cite to federal, that federal standard that had been adopted, and say there's no reason for Colorado not to do it because we generally follow the federal standards. And that federal standard has since been rejected by the Supreme Court, and so that itself is an error here that warrants reversal. Thank you.